Filed 10/23/13  In re Heaven H. CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re HEAVEN H., a Person Coming Under the Juvenile Court Law. | |
| STANISLAUS COUNTY COMMUNITY SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>DAHLIA T.,<br><br>Defendant and Appellant. | F066988<br><br>(Super. Ct. No. 516536)<br><br>**OPINION** |

THE COURT\*

APPEAL from an order of the Superior Court of Stanislaus County.  Ann Q. Ameral, Judge.

Caitlin U. Christian, under appointment by the Court of Appeal, for Defendant and Appellant.

John P. Doering, County Counsel, and Carrie M. Stephens, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

\*       Before Cornell, Acting P.J., Kane, J. and Franson, J.

Appellant Dahlia.T. (mother) appeals from the juvenile court's dispositional order removing her nine-month-old daughter Heaven from her custody pursuant to Welfare and Institutions Code section 361, subdivision (c)(1).[1] Mother contends the order must be reversed because there was no evidence Heaven was at risk of harm in her care and there were less restrictive alternatives to removal. We affirm the juvenile court's order.

## PROCEDURAL AND FACTUAL SUMMARY

Mother, age 15, and Heaven's father (father), age 17, are the parents of two daughters, nine-month-old Heaven, the subject of this appeal, and 20-month-old Monica. Mother and father have a history of marijuana use and domestic violence. In May 2012, the Stanislaus County Community Services Agency (agency) filed a dependency petition on behalf of Monica, in part because mother tested positive for marijuana before and after Monica's birth. The juvenile court provided mother and father reunification services and the agency placed her with a maternal relative.

In January 2013, while participating in reunification services, mother gave birth to Heaven. By that time, mother had completed an adolescent drug treatment program and was visiting Monica weekly. Mother and father no longer had contact and mother was living with her mother, Angelica, and her (mother's) siblings. Angelica was receiving voluntary maintenance services through the agency because of her substance abuse and the condition of her home.

Social worker Van Houten spoke to mother at the hospital. Mother said she and Angelica were clean and sober and she planned to take Heaven to Angelica's home, which she said was clean and appropriate. She said she had a crib and other items there to care for Heaven.

Van Houten visited Angelica's home. The front yard was littered with trash, shredded couch cushions and cigarette butts. In addition, there was a grocery cart and

---

[1] All statutory references are to the Welfare and Institutions Code.

2.

two bottles of antifreeze in the yard. Angelica was in the home with her 12-year-old and three-month-old sons and eight-year-old daughter. She was cleaning the house in preparation for mother and Heaven. Van Houten noticed that Angelica's bedroom and the laundry room were piled with clothing. The bedroom designated for mother was cluttered with a clothes line hanging from each wall, an overturned and broken baby swing, bags of dry cement from the hardware store, a wood burning fireplace with a broken chimney and several other items of debris and trash. There was not a crib or anything else set up for bringing Heaven home.

Van Houten told Angelica that her home was not suitable for an infant and expressed concern that she and mother had not properly prepared a place for Heaven's arrival.

The agency took Heaven into protective custody at the hospital and filed a dependency petition on her behalf alleging mother and father placed Heaven at a substantial risk of harm by their marijuana use, domestic violence, unsuitable accommodations and neglect of Monica. After her discharge from the hospital, Heaven was placed in foster care.

The juvenile court ordered Heaven detained, appointed a guardian ad litem (GAL) for mother and set a combined hearing on jurisdiction and disposition (combined hearing) for February 2013. The court also deemed father Heaven's presumed father. Father's whereabouts were unknown.

In late January 2013, social worker Prutch visited Angelica's home, which she found to be clean and in order. Mother's room was very organized and there were pictures of her children in her room. Mother showed Prutch the items she had for Heaven. Prutch did not report any concerns about the state of the home.

The agency advised the juvenile court in its report for the combined hearing that mother had made good progress in the reunification plan already in place given her age, resources and living environment. She understood the importance of participating in her

3.

services and expressed that she enjoyed learning about child development in her parenting classes and talking about her feelings in counseling. In addition, she tested negative for any illicit drugs. The agency had concerns, however, because of mother's young age and limited experience in parenting and developmental delay. In addition, the agency said she had a limited support system and a strained relationship with Angelica. The agency also was concerned about the cleanliness and appropriateness of Angelica's home even though Angelica had cleaned it. The agency was unsure whether she could maintain that home in that state for an extended period of time.

The agency further reported its plan was to progress to extended visitation between mother and Heaven to include overnight visitation and ultimately achieve a trial visitation. In preparation, the agency intended to closely monitor mother's progress in her parenting classes and assign her a parent/mentor to work with her on a one-on-one basis. In addition, the agency reported, father had not inquired about Heaven, even though he knew she was in the agency's custody.

The agency recommended the juvenile court adjudge Heaven its dependent and offer mother and father reunification services.

In February 2013, the juvenile court conducted the six-month review hearing as to Monica. The court continued services for mother and set a 12-month review hearing for July 2013. The court also granted the agency discretion to begin a trial visit with mother. The court terminated father's reunification services, finding he made minimal progress in his services plan.

In an addendum report filed in March 2013, the agency recommended the juvenile court offer services for mother as to Heaven but deny them to father under section 361.5, subdivision (b)(10).

In March 2013, the juvenile court conducted a contested combined hearing. Mother appeared with her attorney and GAL. Father did not appear. County counsel made an offer of proof, which the court accepted, that mother had a four-hour visit with

4.

Heaven in Angelica's home and began meeting with her parent/mentor. In addition, the social worker informed father of the hearing by text message. He responded that he wanted mother to have full custody of both children.

County counsel and minor's counsel submitted the matter without offering evidence or argument. Mother's attorney argued the reunification plan proposed by the agency was not reasonable because it did not address the agency's concerns with respect to making Angelica's house a safe place to care for Heaven. The attorney suggested mother be placed in a foster home.

County counsel responded that the agency considered Angelica's home to be appropriate and explained the agency increased mother's visits to day-long visits. The agency envisioned that mother would progress to overnight visits and a trial visit. In addition, the agency expected mother to parent her children independently in Angelica's home by keeping her own room clean and pick up as needed in the home so as to keep her children safe. The agency also envisioned that the parent/mentor would be mother's resource for parenting advice and support so that mother did not have to rely on Angelica.

Following argument, the juvenile court adjudged Heaven a dependent child and ordered her removed from mother and father's custody. In ordering Heaven's removal, the juvenile court considered the "totality of the circumstances" and determined there "would be a substantial risk of detriment to [Heaven's] physical[] health, safety, or protection … if she were to be returned to the care of her parents, and there [were] no reasonable means by which she [could] be protected." The juvenile court ordered reunification services for mother only.[2] This appeal ensued.

## DISCUSSION

Mother contends there was insufficient evidence to support the juvenile court's removal order. We disagree.

---

[2] Father did not appeal from the juvenile court's dispositional orders.

Section 361, subdivision (c), the removal statute, prohibits the juvenile court from removing a minor child from the physical custody of the parent(s) with whom the child resided at the time the petition was initiated,

> "unless the juvenile court finds clear and convincing evidence ...: [¶] [t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's … physical custody." (§ 361, subd. (c)(1).)

"The parent need not be dangerous and the child need not have been actually harmed for removal to be appropriate. The focus of the statute is on averting harm to the child. [Citations.]" (*In re Cole C.* (2009) 174 Cal.App.4th 900, 917.)

"In reviewing the sufficiency of the evidence on appeal, we look to the entire record to determine whether there is substantial evidence to support the findings of the juvenile court. We do not pass judgment on the credibility of witnesses, attempt to resolve conflicts in the evidence, or determine where the weight of the evidence lies. Rather, we draw all reasonable inferences in support of the findings, view the record in the light most favorable to the juvenile court's order, and affirm the order even if there is other evidence that would support a contrary finding. [Citation.] When the [juvenile court] makes findings by the elevated standard of clear and convincing evidence, the substantial evidence test remains the standard of review on appeal. [Citation.] The appellant has the burden of showing that there is no evidence of a sufficiently substantial nature to support the order. [Citations.]" (*In re Cole C.*, *supra*, 174 Cal.App.4th at pp. 915-916.) In our view, mother failed to meet her burden.

Mother contends there was insufficient evidence that returning Heaven to her custody would pose a substantial danger to Heaven. To that end, she cites evidence that she made good progress in her case plan, had appropriate housing and severed her relationship with father. In effect, mother cites evidence to support a finding contrary to

the one the juvenile court made. Our role, however, is to determine whether substantial evidence supports the finding actually made. In our opinion, it does.

According to the record, mother and father had a violent relationship. Just eight months before Heaven was born, father choked mother while she was holding then three-month-old Monica, causing mother and Monica to fall to the ground. This was not an isolated situation. Father's parents stated the couple argued, pushed, scratched and hit in Monica's presence, requiring father's father to intervene and remove Monica from the situation. Though father and mother severed their relationship, and even though there is no evidence mother had a pattern of abusive relationships, mother's relationship with father evidences a lack of maturity and judgment that placed her child at risk of serious harm. That same lack of maturity and judgment also was apparent when mother planned to take Heaven home to Angelica's house, even though she had no bedding or supplies for Heaven and the house was unhygienic and unsafe.

Given mother's failure to protect Monica, her young age, potential cognitive delay, her newness to parenting instruction and the precarious state of Angelica's home environment, the juvenile court could find that Heaven would be at a substantial risk of danger if returned to mother's custody.

Mother also contends there were alternatives to removal, such as returning Heaven to her custody under a "stringent" plan of supervision, frequent, unannounced home visits and/or intermittent review hearings and mandated frequent contact with the social worker.

The evidence is sufficient to support the juvenile court's finding there were no reasonable means to protect Heaven's safety without removing her from mother's custody. While at the time of the dispositional hearing mother was addressing the issues that led to dependency jurisdiction, she had only begun to meet with the parent/mentor and begin parenting instruction. It was reasonable for the juvenile court to conclude

based on mother's history that until she more fully progressed in parenting that Heaven could not be protected without removing her from mother's custody.

In sum, we conclude substantial evidence supports the juvenile court's removal order.

## DISPOSITION

The dispositional orders entered on March 12, 2013, are affirmed.